# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| ILLINOIS MECHANICAL SALES, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 2:14 CV 342 PPS |
| | ) |
| STEVENS ENGINEERS AND CONSTRUCTORS, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

School City of Hammond solicited bids to replace a boiler at a Hammond, Indiana high school, and defendant Stevens Engineers and Constructors ("Stevens") submitted the low bid and won the job. Illinois Mechanical Sales ("IMS") claims the bidding was rigged. Using the court's diversity jurisdiction, IMS brought this suit against Stevens pursuant to Indiana's Antitrust Act, I.C. § 24-1-2-1, *et seq*. Stevens has now moved to dismiss the lawsuit pursuant to Federal Rule of Civil Procedure 12(b)(6) arguing IMS, as an equipment supplier, does not have standing to bring an antitrust claim. I agree with Stevens, so its motion is **GRANTED**.

## BACKGROUND

The facts come from the complaint which I will accept as true for present purposes. School City of Hammond is a municipal corporation that owns and operates the public schools in Hammond, Indiana. Hammond wanted to replace the boilers and heating system at one of its high schools, Morton Senior High School, so it contracted

with an architecture and engineering firm, Fanning/Howey Associates, to solicit bids for the project. Accordingly, Fanning/Howey published an Advertisement for Bids on June 3, 2014. The Project Manual that accompanied the Advertisement for Bids spelled out the project's requirements and performance specifications in great detail. Of particular importance, the AFB called for contractors to submit a "base bid," using a specified IMS boiler. In addition, Fanning/Howey published an Addendum suggesting contractors make alternate bids utilizing one of five alternative boilers. Although the alternate bid gave the contractors flexibility regarding which boiler to use, the performance specifications didn't change. So whichever boiler a contractor chose, it had to meet the specifications as set out by Fanning/Howey.

Fanning/Howey received the bids on June 24, 2014. Defendant Stevens Engineers and Constructors submitted the lowest overall bid at $824,999. This was one of the alternate bids using one of the five alternative boilers. Circle R Mechanical, another contractor, came in second, with an alternate bid of $961,000. In third place was the base bid from Hayes Mechanical. The Hayes bid was $974,493 and was the lowest base bid submitted. IMS alleges that the Hayes bid was actually a joint bid with IMS.

Hammond awarded the contract to Stevens. According to IMS, the Stevens alternate bid was unresponsive because the boiler Stevens chose was missing several crucial features required in the Fanning/Howey Project Manual. IMS alleges that Stevens only won because Hammond colluded with Stevens to game the bidding process. If not for the collusion, it alleges the IMS/Hayes joint bid would have been

2

awarded the contract.

IMS filed suit in September 2014 against Hammond and Stevens seeking damages and a preliminary injunction [DE 1]. After briefing and a hearing, I denied IMS's motion for a preliminary injunction [DE 30], and IMS has since dismissed Hammond, leaving Stevens as the sole defendant. Stevens filed this motion to dismiss on October 2, 2014. I held an oral argument on the motion on January 9, 2015. The motion is now fully briefed and ripe for disposition.

## DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted). However, "[a] plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008) (internal citation and quotation marks omitted). Although at this stage I still must accept all allegations as true and draw all reasonable inferences in IMS's favor, I don't need to accept threadbare legal conclusions supported only by conclusory statements. *Iqbal*, 129 S. Ct. at 1949.

IMS has brought this suit under two provisions of Indiana's Antitrust Act. Section 3 makes unlawful acts which operate to restrain open and free competition in bidding to obtain contracts for public and private work. I.C. § 24-1-2-3. Section 7

3

provides that a person injured by a violation of the statute can bring a civil action seeking treble damages, costs and attorney fees. I.C. § 24-1-2-7. Indiana's Antitrust Act is patterned off of federal antitrust statutes, so Indiana courts use federal decisional law to interpret the statute. *See Thompson v. Vigo County Bd. Of County Com'rs*, 876 N.E.2d 1150, 1155 (Ind. Ct. App. 2007); *City of Auburn Through Bd. Of Public Works & Safety v. Mavis*, 468 N.E.2d 584, 585 (Ind. Ct. App. 1984). To state a claim under §§ 24-1-2-3 and 24-1-2-7, IMS has to allege 1) a violation of the antitrust statute, 2) an injury to IMS's business or property proximately caused by the violation, and 3) actual damages. *Id.*

Stevens advances a number of arguments for dismissal, but the crux of its case is antitrust standing. This is a different concept than Article III standing. The basic idea here is that a plaintiff alleging an antitrust claim has to allege an "injury of the type the antitrust laws were intended to prevent." *Alva Elec., Inc. v. Evansville-Vanderburgh Sch. Corp.*, 7 N.E.3d 263, 269 (Ind. 2014) (citing *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)). More concretely, in order to maintain an antitrust action, the plaintiff has to suffer a direct injury. *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 747 (1977). The idea of antitrust standing is to strike a balance that incentivizes private antitrust enforcement while avoiding excessive treble damages litigation. *See In re Indus. Gas Antitrust Litig.*, 681 F.2d 514, 519-520 (7th Cir. 1982). As a result, standing is limited to those who suffer immediate and direct injuries, while those who suffer indirect injuries are excluded. *Id.*

In bidding cases like this one, that means losing bidders have standing to bring

4

an antitrust claim. *See Mavis*, 468 N.E.2d at 586. But *suppliers* to losing bidders do not. *See In re Industrial Gas*, 681 F.2d at 519; *Southwest Suburban Bd. of Realtors, Inc., v. Beverly Area Planning Assoc.*, 830 F.2d 1374, 1379 (7th Cir. 1987) ("suppliers of an injured customer may not seek recovery under the antitrust law because their injuries are too indirect, secondary or remote") (citations omitted). That's because the supplier's injury is derivative of the losing bidder's injury – the antitrust violation leads to the bidder losing the bid-for job which then leads to the supplier losing a potential sale – and derivative injuries are not sufficiently direct to confer antitrust standing. *See Anaren Mircrowave Inc. v. Loral Corp.*, 49 F.3d 62 (2nd Cir. 1995) (per curiam) (holding that a supplier to a losing bidder did not have standing to bring antitrust claim against winning bidder because the supplier's injury was derivative of the injury to the losing bidder).

Stevens argues that IMS was a supplier, not a bidder, and therefore doesn't have standing. In its Complaint, IMS alleges that it submitted a joint bid with Hayes Mechanical [DE 1 at ¶¶ 8, 37]. If I were confined to the four corners of the complaint, IMS's allegations would likely be enough to survive Stevens's motion to dismiss. Losing bidders have standing to bring suits, and IMS alleged it was a bidder.

But I am not confined to the complaint here. On a motion to dismiss, I can consider documents outside of the complaint so long as the documents are critical to the complaint and referred to in it. *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 1994) (citing Fed. R. Civ. P. 10(c)). The Hayes Mechanical bid documents fit that

5

description as the Hayes bid forms the basis for IMS's claim that it was the only responsive bidder. IMS did not attach the bid documents to the complaint, but the bid is in the record from the briefing over IMS's motion for preliminary injunction. The bid document shows that Hayes did not, in fact, submit a joint bid with IMS [DE 19-2]. Hayes Mechanical submitted its own bid in its own name. There is no indication that IMS partnered up with Hayes to bid on the Hammond project. IMS is not even mentioned in the document.

So if IMS did not actually partner up with Hayes Mechanical to submit a joint bid, in what sense is it a bidder? In its briefing IMS claims that it was a bidder because "IMS's equipment was integral to the Project," such that the Hayes bid was "in reality a joint submission" [DE 32 at 5]. IMS tells me that it was a bidder because "its equipment was offered exclusively for the base bid request so any 'bids' would necessarily have included IMS's products." *Id.*

In other words, the base bid called for contractors to use a boiler supplied by IMS. Since the IMS-supplied boiler was "integral" to the Hayes base bid, IMS should be considered a joint bidder with Hayes. But the IMS-supplied boiler was equally "integral" to every other contractor's base bid. By its own logic then, IMS was a "joint bidder" with all five contractors who submitted a base bid, *including the Defendants*, whether those contractors knew it or not. When asked at oral argument whether it viewed itself as a joint bidder with every other company who submitted a base bid, IMS responded in the affirmative. But what sense does that make? The bottom line is this:

6

IMS is a company that sells boilers. It hoped to sell a boiler to the contractor that won the bidding for the Morton High School project. Unfortunately, it lost out to a company that was planning to use a different boiler. In plain English, IMS is a boiler supplier. And suppliers in IMS's position do not have standing to bring an antitrust claim.

There is one final matter to resolve. Stevens has filed a motion for Rule 11 sanctions against IMS [DE 38] arguing IMS had no legal basis for its claims against Stevens. The motion largely reprises the arguments contained in its motion to dismiss.

Rule 11 of the Federal Rules of Civil Procedure authorizes sanctions against a party or attorney who files frivolous pleadings, files pleadings for an improper purpose such as to harass, or makes allegations that they know have no basis in law or fact. The purpose of Rule 11 is to deter baseless filings in the district court. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). In determining whether Rule 11 sanctions are warranted, the Court must "undertake an objective inquiry into whether the party or his counsel should have known that his position was groundless." *Cuna Mut. Ins. Soc. v. Office and Prof'l Employees Int'l Union,Local 39*, 443 F.3d 556, 560 (7th Cir. 2006)(quoting *CNPA v. Chicago Web Printing Pressmen's Union No. 7*, 821 F.2d 390, 397 (7th Cir. 1987)). IMS did not have standing to pursue its claim against Stevens, but its position was not completely groundless. It is at least plausible to argue that since the base bid was built around its product, IMS was something more than a mere supplier and therefore entitled to standing. Accordingly, the motion for sanctions is **DENIED**.

## CONCLUSION

Stevens's motion to dismiss [DE 21] is **GRANTED**, and Plaintiff's complaint is **DISMISSED**. Stevens's motion for sanctions [DE 38] is **DENIED**.

**SO ORDERED.**

ENTERED: January 23, 2015

s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
